UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., | CASE NO. 1:10-cv-02296-LJO-SMS |
| Plaintiff, | |
| v. | |
| OLEN L. CAMPBELL, et al., | **ORDER GRANTING MOTION OF THIRD PARTY DEFENDANT DISH NETWORK TO SET ASIDE DEFAULT** |
| Defendants. | |
| OLEN L. CAMPBELL, et al., | |
| Third Party Plaintiffs, | |
| v. | |
| DISH NETWORK, L.L.C., | (Doc. 16) |
| Third Party Defendant. | |

Pursuant to F.R.Civ.P. 55(c), Third Party Defendant Dish Network, L.L.C., moves to set aside the Entry of Default against it. This Court has reviewed the papers and has determined that this matter is suitable for decision without oral argument pursuant to Local Rule 78-230(h). Having considered applicable law and all written materials submitted, the Court orders that Dish Network's motion be granted.

**I.    Procedural Background**

On December 9, 2010, Plaintiff Joe Hand Promotions, Inc., filed its complaint against Defendants Olen L. Campbell, and Camco Investments, Inc., both doing business as Sports Club.

Plaintiff, which held exclusive nationwide commercial distribution rights to *Ultimate Fighting Championship 107: BJ Penn v. Diego Sanchez* ( the program), sued Defendants under multiple federal statutes for unlawfully intercepting and displaying the program in their commercial establishment, "Sports Club," in Selma, California.  On March 18, 2011, Defendants/Third Party Plaintiffs (Defendants) answered and filed a third party complaint against Dish Network, alleging that Dish Network sold them the commercial satellite television subscription through which an employee ordered the program on the night it was telecast.

Although Dish Network was served on March 24, 2011, it failed to file a timely answer.  On April 15, 2011, Defendants/Third Party Plaintiffs requested entry of default against Dish Network, which the Clerk of Court entered the same day.  On April 20, 2011, Dish Network lodged its proposed motion to dismiss the third party complaint and moved to set aside the default.

**II.    Factual Background**

Dish Network was served on March 24, 2011.  Its answer was due April 14, 2011.  Dish Network assigned the case to its paralegal, Amy Conley, whose office is in Colorado.  Shortly thereafter, Conley took an emergency leave of absence from her job to assist her mother, who was having emergency surgery in Georgia.  On April 11, 1011, Conley forwarded the third-party complaint via e-mail to Dish Network's outside attorney, Jennifer Friend, to prepare and file the answer.  Stating that Conley would contact Friend "next week" to discuss the response, Conley's hurried e-mail did not advise Friend that the answer was due April 14, 2011.  Friend, who was out of her office conducting depositions on April 11, 2011, relied on Conley's representation in the e-mail that they would speak the following week and did not open and review the attached third party complaint.

On Sunday, April 17, 2011, Friend received the notice of entry of default.  Friend immediately telephoned Matthew Pare, attorney for the Defendants/Third Party Plaintiffs, leaving a message explaining her mistake and requesting that Defendants/Third Party Plaintiffs stipulate to set aside the default.  Defendants/Third Party Plaintiffs refused to so stipulate, requiring Dish Network to move to set aside the default.

### III. Discussion

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." F.R.Civ.P. 55(a). The court may set aside the entry of default for good cause, and the entry of a default judgment pursuant to F.R.Civ.P. 60(b). F.R.Civ.P. 55(c).

"Judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984). Motions to set aside default judgments seek to balance the "overriding judicial goal of deciding cases correctly, on their legal and factual merits, with the interest of both litigants and the courts in the finality of judgments." *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 695 (9th Cir. 2001). The rules accomplish this by limiting the bases by which parties may seek relief while granting Courts the discretion to reverse the finality of judgments to reach the merits of cases that were never decided on the merits. *Id.* Logically, policy considerations that apply to default judgments also apply to defaults, since these are an initial step toward the entry of a default judgment. In the Rule 55(c) context, however, the policy must be more liberally applied since the Court need not contend with the judicial interest in the finality of judgment. *United States v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 n. 1 (9th Cir. 2010).

In the Ninth Circuit, the "good cause" standard for setting aside a default is the same standard applied to set aside a default judgment under F.R.Civ.P. 60(b)(1). *Signed Personal Check*, 615 F.3d at 1091; *TCI Group*, 244 F.3d at 696. Under the good cause standard, the Court must evaluate (1) "whether the defendant's culpable conduct led to the default;" (2) "whether the defendant has a meritorious defense;" and (3) "whether reopening the default judgment would prejudice the plaintiff." *Signed Personal Check*, 615 F.3d at 1091; *TCI Group*, 244 F.3d at 696. The "good cause" standard is consistent with the "excusable neglect" standard articulated by the Supreme Court in *Pioneer Inv. Services Co. v. Brunswick Assoc. Ltd. Partnership*, 507 U.S. 380, 395 (1993), which takes into account "prejudice, the length of delay and impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of

the movant, and whether the movant acted in good faith." *TCI Group*, 244 F.3d at 696.  The party seeking to vacate a default has the burden of proving that these factors favor setting aside the default.  *Id.*

### A.   **Culpable Conduct**

Counsel for Defendant/Third Party Plaintiff argues that Dish Network's failure to timely file an answer is "inexcusable," arguing that it initially received communication from Dish Network's in-house legal staff, specifically a paralegal named "Amy," and that miscommunication between client and lawyer does not justify relief from default.  In support of this proposition, Defendant/Third Party Plaintiff relies on *Pretzel & Stouffer, Chartered v. Imperial Adjusters, Inc.*, 28 F.3d 42, 45 (7th Cir. 1993), in which an attorney involved in an ongoing case who failed to answer an amended complaint by the date specified in the district court's order attributed his untimeliness to general difficulties communicating with his client.  The Seventh Circuit pointedly noted multiple other instances of the attorney's untimeliness and neglect, all accompanied by vague excuses indicative of poor case management and "routine back-office problems."  *Id.* at 46, *quoting Connecticut Nat'l Mortgage Co. v. Brandstatter*, 897 F.2d 883, 884-85 (7th Cir. 1990).  Defendant/Third Party Plaintiff adds that Conley's need to travel out of state is irrelevant since Dish Network is a large corporation with many employees to pick up the slack when a single individual employee becomes unavailable.  Although the Court finds Conley's and Friend's actions unprofessional and careless, it declines to take such a harsh position.

When applying the good cause standard, the Ninth Circuit has typically found a defendant's conduct to be culpable "where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond."  *TCI Group*, 244 F.3d at 698.  Although a defaulting party's familiarity with legal processes or representation by an attorney may strongly suggest the likelihood that the delay was deliberate, willful or in bad faith, legal sophistication or ignorance is not the decisive factor.  *Id.* at 699 n. 6.  "[S]imple carelessness is not sufficient to treat a negligent failure to reply as inexcusable, at least without a demonstration

///

that other equitable factors, such as prejudice, weigh heavily in favor of denial of the motion to set aside a default." *Signed Personal Check*, 615 F.3d at 1092.

Possibilities for a party's failure to comply with a court deadline range from the prevention of response by forces beyond the party's control to a simple choice to flout the deadline. *Pioneer Investment*, 507 U.S. at 387-88. In *TGI Group*, the Court found the defaulting defendant's failure to file a timely answer was excusable since she was grieving her young husband's death while experiencing severe depression that required medication, struggling to care for two young children, and selling her California home and moving to a new home in Florida. *Id.* No evidence suggested that the defaulting defendant deliberately sought to manipulate the legal system, and she diligently sought to set aside the default judgment in a respectful manner. *Id.* In contrast, by deliberately failing to update its address so that the plaintiff would be unable to reach it, the defendants in *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 815 (9th Cir. 1985), wilfully failed to respond.

Where a rule permits late action because of excusable neglect, courts may appropriately accept late filings caused by inadvertence, mistake, carelessness, or intervening circumstances beyond a party's control. *Pioneer Investment*, 507 U.S. at 388 (applying bankruptcy rules regarding the bar date). This may be true even when the inadvertence, mistake, or carelessness is that of the party's attorney as long as there is no evidence of prejudice or bad faith. *Id.* at 398. In *Pioneer Investment*, the attorney's neglect was excusable based on the unusual form of notice used. *Id.*

No evidence of deviousness, bad faith, or the deliberate flouting of the deadline has been alleged here. Friend and Conley were careless but they are not culpable.

**B.     Meritorious Defense**

Although a party seeking to vacate a default judgment must factually set forth its defense, the burden on a party seeking to set aside a default judgment is not heavy. *TCI Group*, 244 F.3d at 700. The party need only set forth facts sufficient to set forth a cognizable defense to its opponent's claims. *Id.* The truth of the factual allegations is not resolved in the motion to set aside default since that will be the subject of the ensuing litigation. *Id.* Nonetheless, "a mere

5

general denial without facts to support it" will not satisfy this prong of the good cause standard. *Franchise Holding II, LLC v. Huntington Restaurants Group, Inc.*, 375 F.3d 922, 926 (9th Cir. 2004), *cert. denied*, 544 U.S. 949 (2005), *quoting Madsen v. Bumb*, 419 F.2d 4, 6 (9th Cir. 1969). Carefully articulating a cognizable defense based on the provisions of its written contract with Defendants/Third Party Plaintiffs, Dish Network satisfies this prong of the good cause standard.

### C.      Prejudice to Plaintiff

Claiming that the delay associated with Dish Network's missing the deadline could generally increase the difficulties associated with discovery and lead to the loss or destruction of evidence, Defendants/Third Party Plaintiffs assert no prejudice greater than that inherent in any delay associated with setting aside a default.   Delay is not sufficient prejudice to deny setting aside a default. *TCI Group*, 244 F.3d at 701.  A plaintiff is not prejudiced simply because it is denied a swift victory and must litigate its claims on their merits.  *Bateman v. United States Postal Service,* 231 F.3d 1220, 1225 (9th Cir. 2000).

"The standard is whether the [plaintiff's] ability to pursue his claim will be hindered." *TCI Group*, 244 F.3d at 701, *quoting Falk*, 739 F.2d at 463.  "To be considered prejudicial, 'the delay must result in tangible harm such as loss of evidence, increased difficulties of recovery, or greater opportunity for fraud or collusion."  *TCI Group*, 244 F.3d at 701, *quoting Thompson v. American Home Assur. Co.*, 95 F.3d 429, 433-34 (6th Cir. 1996).  For example, a plaintiff established prejudice where it forcefully established that any delay would allow the defaulting defendant to hide further assets.  *Franchise Holding II*, 375 F.3d at 926-27.

No such prejudice is apparent in this case.  Dish Network acted within days of learning it had missed the deadline to remedy its error.  In fact, Defendants/Third Party Plaintiffs refused the opportunity to stipulate to a late filing on the first business day after the default was entered.  No party will be prejudiced by setting aside the Clerk's entry of default against Dish Network.

///
///
///
///

### III. Conclusion and Order

For the foregoing reasons, Dish Network's motion to set aside the default entered against it on April 15, 2011, is hereby GRANTED. Dish Network is directed to file is responsive pleadings within twenty-one days of the service of this order.

IT IS SO ORDERED.

Dated:   July 1, 2011                                /s/ Sandra M. Snyder
                                                    UNITED STATES MAGISTRATE JUDGE