1
2
3
4
5
6
7
8
9          **IN THE UNITED STATES DISTRICT COURT**

10          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

11

12   JOE HAND PROMOTIONS, INC.,              CASE NO. CV F 10-2296 LJO SMS

13              Plaintiff,                   **ORDER ON THIRD-PARTY DEFENDANT**
                                             **DISH NETWORK, L.L.C.'S F.R.Civ.P. 12**
14       vs.                                 **MOTIONS TO DISMISS**
                                             (Doc. 25.)
15   OLEN L. CAMPBELL, et al.,

16              Defendants.
     _____/

17

18   AND RELATED THIRD-PARTY ACTION.

19   _____/

20

21                        **INTRODUCTION**

22          Third-party defendant Dish Network LLC ("Dish Network") seeks to dismiss defendants/third-

23   party plaintiffs' breach of contract claim in the absence of Dish Network's contract with

24   defendants/third-party plaintiffs.  Dish Network further seeks to dismiss all of defendants/third-party

25   plaintiffs' claims for failure to join Superior Satellite, LLC ("Superior Satellite") as an indispensable

26   party.  This Court considered Dish Network's F.R.Civ.P. 12(b)(6) and 12(b)(7) motions to dismiss on

27   the record without a hearing, pursuant to Local Rule 230(g).  For the reasons discussed below, this Court

28   DISMISSES with leave to amend defendants/third-party plaintiffs' claims.

                                              1

# BACKGROUND

## Summary

Defendant/third-party plaintiff Olen L. Campbell ("Mr. Campbell") owns defendant/third-party plaintiff Camco Investments, Inc. ("Camco Investments") and operates a Selma bar called the Sports Club.[1]  Mr. Campbell arranged for Dish Network television services for the Sports Club.  The Campbell parties claim that Dish Network incorrectly set up the account as a residence rather than a business.  After Mr. Campbell arranged to show a pay-per-view program, plaintiff Joe Hand Promotions, Inc. ("Joe Hand"), the exclusive distributor of the program, pursued telecast piracy claims against the Campbell parties in this action.  The Campbell parties claim that they would not be subject to Joe Hand's claims had Dish Network correctly set up the account as for a business.  Dish Network contends that the target of the Campbell parties' claims is Superior Satellite, with whom Mr. Campbell arranged the Dish Network service.

## The Campbell Parties' Allegations And Claims

The Campbell parties proceed on their third-party complaint ("TPC") against Dish Network.  The following will summarize the TPC's allegations.

In November or December 2009, a door-to-door salesperson working for Dish Network offered Mr. Campbell a special price for businesses to switch the Sports Club's service from DirecTV, Inc. to Dish Network.  Mr. Campbell decided to switch and was assured by the salesperson and installers that a commercial account would be established and that Mr. Campbell would be charged accordingly.

On December 12, 2009, a Sports Club patron requested to view the Ultimate Fighting Championship 107: BJ Penn v. Diego Sanchez ("fight program").  Mr. Campbell ordered the fight program through his Dish Network account on the Sports Club television and paid for it not knowing that the account for the Sports Club was for a residence, not a business.  The Campbell parties were charged incorrectly a residential rate to show the fight program and "were inappropriately allowed access to it at a commercial location without first having to contract Joe Hand."

Joe Hand contends that showing the fight program was unlawful and pursues federal

---

[1]   Mr. Campbell, Camco Investments and the Sports Club will be referred to collectively as the "Campbell parties."

communications and related claims against the Campbell parties in this action.  The Campbell parties have incurred defense costs due to Dish Network's failure "to appropriately set up the television service at [the] Sports Club and most importantly charge [the Campbell parties] the correct amount for pay-per-view of the subject fight program."

The TPC alleges:

1.   A (first) negligent misrepresentation claim that Dish Network "negligently made false representations about the television account for [the] Sports Club being set up as a commercial account, when it was in fact set up as a residential account and was billed accordingly";

2.   A (second) breach of contract claim that Dish Network breached contracts "by failing to install and designate the television account for [the] Sports Club as a commercial account and bill accordingly";

3.   A (third) unfair business practices claim that Dish Network engaged in unfair and fraudulent acts to violate California Business and Professions Code, §§ 17200, et seq.;

4.   A (fourth) negligence claim that Dish Network "failed to competently and lawfully provide the television signal in accordance with all applicable federal laws and regulations regarding pay-per-view programs, and failed to correctly bill [the Campbell parties] for the subject fight program"; and

5.   A (fifth) fraud and intentional deceit claim that Dish Network "falsely represented that it would lawfully provide the television signal for the subject fight program and would correctly bill" the Campbell parties.

The TPC seeks recovery for the Campbell parties' compensatory and consequential damages.

**Commitment And Residential Customer Agreements**

Dish Network invites this Court to consider what it characterizes and the "subject contracts" which Mr. Campbell entered into with Superior Satellite, "an independent Dish Network retailer, for residential cable services" and which Dish Network further describes as "separate and independent" from Dish Network.  Dish Network points to the 24 Month Commitment Agreement ("Commitment Agreement"), which provides in part:

1    This agreement ("Agreement") sets forth the terms and conditions of the Digital Home
     Advantage Promotion.   The Residential Customer Care Agreement ("RCA"),
2    incorporated herein by reference contains additional terms and conditions.  The RCA is
     included in your receiver's user's guide and is available online at dishnetwork.com.
3                . . .

4    BY SIGNING THIS AGREEMENT, YOU ACKNOWLEDGE AND AGREE THAT
     YOU HAVE RECEIVED, READ AND UNDERSTAND TO BE BOUND BY ALL
5    THE  TERMS  AND  CONDITIONS  SET  FORTH  IN  THIS  AGREEMENT,
     INCLUDING WITHOUT LIMITATION, THE TERMS AND CONDITIONS SET
6    FORTH ABOVE AND IN THE RCA, AND ALL SUCH TERMS WERE DISCLOSED
     TO YOU PRIOR TO LEASE.  (Uppercase in original.)
7

8        The Commitment Agreement bears Mr. Campbell's December 11, 2009 signature and lists his

9    Visalia residential address, not the Sports Club's address.

10       Dish Network further points to the Residential Care Agreement ("RCA"), which is expressly

11   incorporated into the Commitment Agreement and provisions of which will be addressed below.

12                          **DISCUSSION**

13              **F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards**

14       Relying on F.R.Civ.P. 12(b)(6), Dish Network seeks to dismiss the TPC's (second) breach of

15   contract claim in the absence of Dish Network's contract with the Campbell parties for commercial

16   satellite programming.

17                          ***Pleading Standards***

18       "When a federal court reviews the sufficiency of a complaint, before the reception of any

19   evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether

20   a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the

21   claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development

22   Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either

23   a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal

24   theory."  *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of

25   Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).  A F.R.Civ.P. 12(b)(6) motion "tests the legal sufficiency

26   of a claim."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

27       In addressing dismissal, a court must:  (1) construe the complaint in the light most favorable to

28   the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether the

                                            4

1  plaintiff can prove any set of facts to support a claim that would merit relief.  *Cahill v. Liberty Mut. Ins.*

2  *Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is not required "to accept as true

3  allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In*

4  *re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  A court

5  "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel.*

6  *Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and must  not "assume that the [plaintiff] can

7  prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not

8  been alleged."  *Associated General Contractors of California, Inc. v. California State Council of*

9  *Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983).  A court need not permit an attempt to amend if

10  "it is clear that the complaint could not be saved by an amendment."  *Livid Holdings Ltd. v. Salomon*

11  *Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

12      A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than

13  labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell*

14  *Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).

15  Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to

16  plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing*

17  *Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, "a complaint . . . must contain either

18  direct or inferential allegations respecting all the material elements necessary to sustain recovery under

19  some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v.*

20  *Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

21      In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court recently

22  explained:

23          . . . a complaint must contain sufficient factual matter, accepted as true, to "state
        a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the
24      plaintiff pleads factual content that allows the court to draw the reasonable inference that
        the defendant is liable for the misconduct alleged. . . . The plausibility standard is not
25      akin to a "probability requirement," but it asks for more than a sheer possibility that a
        defendant has acted unlawfully.  (Citations omitted.)

26

27      After discussing *Iqbal*, the Ninth Circuit Court of Appeals summarized: "In sum, for a complaint

28  to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content,

5

must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572

F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, __ U.S. __, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, __ U.S. __, 129 S.Ct. at 1949-1950.

With these standards in mind, this Court turns to Dish Network's challenges to the breach of

contract claim.

### **Breach Of Contract**

### ***Allegations And Elements***

The TPC's (second) breach of contract claim alleges:

> [The Campbell parties] entered into contracts with Dish Network L.L.C. Specifically, there was an agreement between [the Campbell parties] and Dish Network L.L.C. that Dish Network L.L.C. would install and provide a television signal and services for the business establishment known as Sports Club, and charge them appropriately.

> . . .

> Despite undertaking specific obligations toward [the Campbell parties], Dish Network L.L.C. breached their contracts by failing to install and designate the television account for Sports Club as a commercial account and bill accordingly. Most importantly, Dish Network L.L.C. failed to charge [the Campbell parties] the correct price for the television signal for the subject fight program.

"The standard elements of a claim for breach of contract are: '(1) the contract, (2) plaintiff's

performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff

therefrom.'"   *Wall Street Network, Ltd. v. New York Times Co.*, 164 Cal.App.4th 1171, 1178, 80

1  Cal.Rptr.3d 6 (2008).  "To form a contract, an 'offer must be sufficiently definite . . . that the

2  performance promised is reasonably certain.'"  *Alexander v. Codemasters Group Limited*, 104

3  Cal.App.4th 129, 141. 127 Cal.Rptr.2d 145 (2002).

4  ### *Documents Central To Breach Of Contract*

5          Dish Network faults the TPC's failure "to attach relevant contracts" or "plead them verbatim."

6  Dish Network invites this Court to consider the Commitment Agreement and RCA to evaluate dismissal

7  of the breach of contract claim.

8          "As to the contract, where a written instrument is the foundation of a cause of action, it may be

9  pleaded in haec verba by attaching a copy as an exhibit and incorporating it by proper reference."  *Byrne*

10 *v. Harvey,* 211 Cal.App.2d 92, 103, 27 Cal.Rptr. 110 (1962); *Holly Sugar Corp. v. Johnson,* 18 Cal.2d

11 218, 225, 115 P.2d 8 (1941).  "Where a party relies in his complaint upon a contract in writing, and it

12 affirmatively appears that all the terms of the contract are not set forth in hæc verba, nor stated in their

13 legal effect, but that a portion which may be material has been omitted, the complaint is insufficient."

14 *Gilmore v. Lycoming Fire Ins. Co.*, 55 Cal. 123, 124 (1880).

15         For a F.R.Civ.P. 12(b)(6) motion, a court generally cannot consider material outside the

16 complaint. *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003).

17 Nonetheless, a court may consider exhibits submitted with the complaint.  *Durning v. First Boston*

18 *Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987);*Van Winkle*, 290 F.Supp.2d at 1162, n. 2.   In addition, a

19 "court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to

20 the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the

21 authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir.

22 2006).  A court may treat such a document as "part of the complaint, and thus may assume that its

23 contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342

24 F.3d 903, 908 (9th Cir.2003).  Such consideration prevents "plaintiffs from surviving a Rule 12(b)(6)

25 motion by deliberately omitting reference to documents upon which their claims are based." *Parrino*

26 ///

27 ///

28 ///

7

*v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).[2]   A "court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint." *Sumner Peck Ranch v. Bureau of Reclamation*, 823 F.Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)).   Moreover, "judicial notice may be taken of a fact to show that a complaint does not state a cause of action." *Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd.*, 245 F.2d 67, 70 (9th Cir. 1956); *see Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 984 (9th Cir. 1997).   A court properly may take judicial notice of matters of public record outside the pleadings and consider them for purposes of the motion to dismiss. *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988).

Dish Network notes that the TPC "specifically" references the Commitment Agreement with its allegation that the Campbell parties "entered into contracts with Dish Network L.L.C."   Dish Network points out that the Commitment Agreement "expressly" incorporates the RCA and that Mr. Campbell acknowledged that he was bound to the Commitment Agreement and RCA.   Dish Network argues that the Commitment Agreement and RCA are "central" to the Campbell parties' claims as "the very basis of their breach of contract allegations."   Dish Network notes the absence of a challenge to the authenticity of the Commitment Agreement and RCA.

The Campbell parties characterize Dish Network's reference to the Commitment Agreement and RCA as an improper attempt to convert a F.R.Civ.P. 12(b)(6) motion into a "premature" summary judgment motion.   The Campbell parties construe the Commitment Agreement and RCA as "extrinsic to the operative pleadings" to cut off the Campbell parties' "right to fully explore and develop this rightful claim."   The Campbell parties identify the "basic agreement" as "an oral contract that was formed when the Dish Network L.L.C. salesperson went into the Sports Club and sold the satellite television service."   The Campbell parties continue that the authenticity of the Commitment Agreement and RCA "cannot be assumed."

The Campbell parties fail to demonstrate that the Commitment Agreement and RCA are beyond

---

[2]   "We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Parrino*, 146 F.3d at 706).

8

1    this Court's consideration.  The breach of contract claim alleges that Dish Network "entered into

2    contracts" with the Campbell parties and references the potential of "a written contract."  The Campbell

3    parties offer nothing meaningful to challenge the authenticity of the Commitment Agreement and RCA

4    and merely note such authenticity "cannot be assumed."  The Campbell parties do not challenge Mr.

5    Campbell's signature on the Commitment Agreement.  In the end, the Commitment Agreement and

6    RCA are central to the breach of contract claim, and this Court will consider them.

7                              ***Absence Of Breach To Provide Commercial Service***

8            Dish Network argues that the TPC fails to allege Dish Network's breach of a contract in that the

9    Commitment Agreement and RCA reflect provision of residential service for Mr. Campbell, not

10   commercial service for the Sports Club.  When a breach of contract claim is based on a contract which

11   "shows unambiguously on its face that the relief prayed for is not merited, then dismissal is appropriate."

12   *Jacksonville Newspaper Printing Pressmen and Assistants' Union No. 57*, 340 F.Supp. 993, 995 (M.D.

13   Fla. 1972).

14           Dish Network contends that the TPC's allegation that Dish Network breached the contract by

15   failing to establish a commercial account is a legal conclusion contradicted by the Commitment

16   Agreement and RCA, which provide only residential service.  Dish Network points to the Commitment

17   Agreement's opening paragraph that this "agreement . . . sets forth the terms and conditions of the

18   Digital **Home** Advantage promotion."  (Bold added.)  Dish Network notes in the Commitment

19   Agreement an absence to provide commercial service.  Dish Network also relies on the Commitment

20   Agreement's identification of Mr. Campbell as customer at his Visalia residence street address with no

21   reference to commercial service for the Sports Club at its Selma address.

22           To further its cause, Dish Network quotes the following from the RCA:

23           <u>Private Home Viewing Only.</u>  DISH Network provides Services to you solely for
             viewing, use and enjoyment in **your private home**.  You agree that no Services provided
24           to you will be viewed in areas open to the public, **commercial establishments** or other
             residential locations.  Services may not be rebroadcast or performed, and admission may
25           not be charged for listening to or viewing any Services. . . .
                     . . .
26
             <u>Other.</u>  No salesperson, installer, customer service representative, authorized
27           retailer, or other similarly situated individual is authorized to change or override this
             Agreement. . . .  (Underling in original; bold added.)
28

                                                      9

Dish Network concludes that since the Commitment Agreement and RCA "are plainly for residential services," Dish Network could not have breached a contractual obligation for commercial service "that did not exist."

The Campbell parties argue that from their "perspective," they had a contract with Dish Network for commercial service for the Sports Club which forms the "basis" of Dish Network's breach of contract. The Campbell parties rely on the salesperson's and installers' "oral representations" to Mr. Campbell. The Campbell parties equate the salesperson and installers as agents to bind Dish Network. The Campbell parties contend that nothing indicates that the Commitment Agreement and RCA were fully integrated to represent "the totality of the agreement" between the Campbell parties and Dish Network.

This Court agrees with Dish Network that the Commitment Agreement and RCA expressly contemplate residential service, not commercial service for the Sports Club. The Campbell parties identify no specific contract for the provision of commercial service for the Sports Club. A purported oral agreement with a salesperson is not adequately alleged. Of key importance, the Commitment Agreement and RCA contradict claims for commercial service for the Sports Club. Dish Network has demonstrated that the breach of contract claim is subject to dismissal. However, out of an abundance of caution, the Campbell parties are granted an attempt, if they so choose, to amend their breach of contract claim, keeping in mind F.R.Civ.P. 11(b) obligations.

**Failure To Join Indispensable Party**

Dish Network seeks F.R.Civ.P. 12(b)(7) dismissal of all TPC claims in that the TPC fails to join indispensable Superior Satellite, "the only party which could have actually made any alleged representations to [Mr. Campbell] regarding satellite programming for [the] Sports Club and the sole party responsible for fulfilling any alleged representations or promotional offers allegedly provided to Mr. Campbell."

F.R.Civ.P. 12(b)(7) authorizes a motion to dismiss for "failure to join a party under Rule 19." F.R.Civ.P. 19(a)(1)(A) addresses compulsory joinder if feasible of a person who "in that person's absence, the court cannot accord complete relief among existing parties."

F.R.Civ.P. 19 "requires that if, as a matter of equity the court finds that the lawsuit cannot

proceed without the absent party, then that party be considered indispensable and the case dismissed." If, however, the lawsuit can proceed, the party is only a necessary one." *Shelton v. Exxon Corp.*, 843 F.2d 212, 216 (5th Cir. 1988). To address F.R.Civ.P. 12(b)(7) dismissal, a court considers: (1) whether an absent party is "necessary" to the suit; and (2) if so, and if that party cannot be joined, whether the absent party is "'indispensable' so that in 'equity and good conscience' the suit should be dismissed." *Shermoen v. U.S.*, 982 F.2d 1312, 1317 (9th Cir. 1992) (quoting *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir.1990)). "In determining whether a party is 'necessary' under Rule 19(a), a court must consider whether 'complete relief' can be accorded among the existing parties, and whether the absent party has a 'legally protected interest' in the subject of the suit."   *Shermoen v. U.S.*, 982 F.2d 1312, 1317 (9th Cir. 1992).

Dish Network notes that the Commitment Agreement identifies Superior Satellite as the "retailer and seller" and that Dish Network and Superior Satellite "are two separate and independent entities." Dish Network points to the RCA, which provides:

> J. <u>Promotional Offers and Items.</u> If a third party, such as an independent DISH Network retailer, integrator or private cable operator, offered you a promotional offer or item in connection with your subscription to the Services, such third party is wholly responsible for fulfilling such promotional offer or providing such promotional item, and DISH Network is not in any way responsible for such fulfillment.  (Underlining in original.)

Dish Network equates Superior Satellite's presence in this action as "essential to the disposition of critical issues."  Dish Network identifies Superior Satellite as the independent retailer which "may have contacted" the Campbell parties about the Digital Home Advantage Promotion and which would have "contracted" with the Campbell parties "for residential cable services rather than Dish Network." Dish Network further identifies Superior Satellite as the only retailer and seller to have communicated and negotiated with Mr. Campbell.

The Campbell parties appear to concede that Superior Satellite is a required party in that they "are not opposed to amending the third-party complaint to include Superior Satellite."  As such, the Campbell parties request leave to amend the TPC "to include additional claims against Superior Satellite, LLC and to join that entity as a party to this civil action."

Although the Campbell parties acquiesce to join Superior Satellite, their opposition papers are

silent as to the merits of the TPC's claims against Dish Network.  The Campbell parties merely seek an opportunity to amend rather than complete dismissal of their claims.  Given that Superior Satellite appears as a required party, the need to amend the TPC is clear.  What remains unclear is the Campbell parties' intentions as to Dish Network.  Out of an abundance of caution, the Campbell parties are granted an attempt, if they so choose, to amend all TPC claims, keeping in mind F.R.Civ.P. 11(b) obligations.

## **CONCLUSION AND ORDER**

For the reasons discussed above, this Court:

1.      DISMISSES without prejudice and with leave to amend the TPC's (second) breach of contract claim for failure to allege a viable claim against Dish Network;

2.      DISMISSES without prejudice and with leave to amend all of the TPC's claims for failure to join Superior Satellite as a required party;

3.      ORDERS the Campbell parties, no later than August 24, 2011, to file and serve a first amended third-party complaint in conformance with the requirements addressed above; and

4.      ORDERS Dish Network, not later than September 16, 2011, to file and serve a response to the first amended third-party complaint if Dish Network is named as a third-party defendant.

IT IS SO ORDERED.

**Dated:    August 5, 2011**                    _____/s/ Lawrence J. O'Neill_____
                                                        UNITED STATES DISTRICT JUDGE